IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| SHANEQUA D. DENNIE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 16-3643 |
| | * | |
| MEDIMMUNE, INC. et al., | * | |
| Defendants. | * | |

******
**MEMORANDUM OPINION**

In this employment discrimination action, the parties move to stay the proceedings pending arbitration. ECF No. 9. Defendant Anthony Williams also moves to compel arbitration as to Count Nine of the complaint, which brings suit against him exclusively for intentional infliction of emotional distress. ECF No. 11. The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons stated below, the joint motion to stay is granted in part and denied in part. Defendant Williams' motion to compel arbitration is granted.

**I.    BACKGROUND**[1]

On November 28, 2011, Defendant MedImmune, LLC ("MedImmune") hired Plaintiff Shanequa Dennie ("Dennie") as a Production Tech 3 and placed her in the company's manufacturing center in Frederick, Maryland. Dennie signed an "Employee Agreement" in connection with working for Defendants. The Agreement contains an arbitration clause which states, in pertinent part:

---

[1] The following facts are taken from Dennie's Complaint and the Employee Agreement attached to Williams' motion to compel arbitration.

> I understand and agree to have resolved by arbitration any and all disputes arising from or relating to my employment with Company, my application for such employment, my termination of such employment or post-employment issues with Company. These include:
>
> (A) claims relating to any discrimination on the basis of age, race, color, sex, religion, national origin, disability, retaliation, marital status, veteran status, sexual orientation or any other claim of employment discrimination under the Age Discrimination in Employment Act (29 U.S.C. § 12101 *et seq.*), Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*); Article 49B of the Maryland Annotated Code; or any other federal, state or local prohibition against discrimination in the above protected or similar categories;
>
> \*\*\*
>
> (C) claims for breach of an express or implied contract or tort claims.

Employee Agreement, ECF No. 11-1 at 2–3.

Jeremiah Howe served as Dennie's immediate supervisor who in turn reported to the center's Associate Director, Defendant Anthony Williams. *See* Complaint, ECF No. 1 at 5. Williams and Dennie began a romantic relationship a couple years into Dennie's employment. Over the course of their relationship, Dennie alleges that Williams sent her sexually suggestive text messages and often asked Dennie to leave her night shift early to join him at his apartment. Dennie later learned that Williams was in romantic relationships with other MedImmune employees. So, on April 27, 2015, Dennie informed Williams that she was ending the relationship and requested a transfer to another department at a different location. Dennie alleges that Williams retaliated by launching an investigation into her timesheets, knowing that Dennie often left work before the end of her shift to be with him. The investigation ultimately led to Dennie's resignation on May 15, 2015.

On November 4, 2016, Dennie filed her nine-count Complaint in this Court. ECF No. 1. Counts One through Eight allege MedImmune violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* and the Maryland Fair Employment Practices Act, Md.

Code Ann., State Gov't § 20-606, *et seq.* Specifically, in Counts One and Two, Dennie alleges that MedImmune, through its agent, Williams, subjected Dennie to disparate treatment and *quid pro quo* sexual harassment in violation of Title VII. In Count Three, she alleges Williams' sexual advances, sexual behavior with other MedImmune employees, and threatening remarks created a hostile work environment and that MedImmune failed to take corrective action in violation of Title VII. Count Four against MedImmune claims retaliation for Williams' role in the investigation into Dennie's timesheets. In Counts Five through Eight, Dennie alleges violations of the Maryland Fair Employment Practices Act. Count Nine is a claim of intentional infliction of emotional distress against Williams for his inappropriate behavior and for his initiation of the timesheet investigation which led to Dennie's resignation.

On December 15, 2016, Dennie and Defendants MedImmune, Inc. MedImmune LLC, MedImmune Biologics Inc., AstraZenaca LP, and AstraZeneca Pharmaceuticals LP, submitted a joint motion to stay the court proceedings pending arbitration of Counts One through Eight pursuant to the arbitration clause in Dennie's Employee Agreement. ECF No. 9. However, the parties did not agree to arbitrate Count Nine, the only claim against Williams. Thus, on December 22, Williams filed a motion to compel arbitration of Count Nine pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. ECF No. 11.

## II. STANDARD OF REVIEW

Motions to dismiss in connection with a valid arbitration agreement are typically brought under Rule 12(b)(6) because "'the existence of a valid arbitration clause does not technically deprive the Court of subject matter jurisdiction.'" *Cheraghi v. MedImmune, LLC*, No. 8:11-CV-01505 AW, 2011 WL 6047059, at *2 (D. Md. Dec. 5, 2011) (quoting *Liveware Publ'g, Inc. v. Best Software, Inc.*, 252 F. Supp. 2d 74, 78 (D. Del. 2003)); *see also Schwartz v. Coleman*, 833

3

F.2d 310, at *2 (4th Cir. 1987) (Table). "It instead requires the Court to forego the exercise of jurisdiction in deference to the parties' contractual agreement to address in another forum those disputes which fall within the scope of the agreement to arbitrate." *Liveware*, 252 F. Supp. 2d. at 78–79. Therefore, the Court will construe Williams' motion one seeking dismissal under Rule 12(b)(6) rather than 12(b)(1).

However, the propriety of arbitration turns on construing the scope of the arbitration clause in Dennie's Employment Agreement which is not part of Dennie's complaint.[2] Rule 12(d), therefore, compels the Court to treat Williams' Motion to Dismiss as one for summary judgment. Fed. R. Civ. P. 12(d); *see also Nationwide Ins. Co. of Columbus, Ohio v. Patterson*, 953 F.2d 44, 47 n.1 (3d Cir. 1991) (holding that Rule 56 governs the dismissal of actions that an arbitration agreement covers when the court considers matters beyond the pleadings). In so doing, the court must give the nonmoving party a reasonable opportunity to present all material pertinent to the motion. *See* Fed. R. Civ. P. 12(d). As this Court has consistently held, this standard entails notice and a fair opportunity to contest the factual matter presented. *See, e.g.*, *Cheraghi*, 2011 WL 6047059, at *2–3 (citation omitted).

Here, the notice requirement is satisfied because Williams attached an exhibit to his motion and Dennie responded. The overall fairness requirement is satisfied because the material facts are not in dispute at this stage and it is implausible that any discoverable information would assist Dennie in defeating Williams' motion. Accordingly, the Court will treat Williams' motion as one for summary judgment.

---

[2] Because the Agreement is essentially integral to the Complaint, it is likely that the Court could decide Williams' motion without converting it into a motion for summary judgment. *See, e.g.*, *Cheraghi v. MedImmune, LLC*, No. 8:11-CV-01505 AW, 2011 WL 6047059, at *3 (D. Md. Dec. 5, 2011); *Westmoreland v. Prince George's County, Md.*, No. 09CV2453 AW, 2011 WL 3880422, at *2 n.1 (D. Md. 2011). Nonetheless, the Court treats it as a motion for summary judgment out of an abundance of caution.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1).

## III. ANALYSIS

Neither party disputes that the arbitration clause is part of Dennie's Employee Agreement with MedImmune and is governed by the Federal Arbitration Act ("FAA"). Nor does Dennie dispute that the arbitration clause covers her claims against Defendant Medimmune (Counts One through Eight) and that these counts will indeed proceed to arbitration. Rather, she argues that Count Nine, her intentional infliction of emotional distress claim against Defendant Williams, is not arbitrable. For the reasons stated below, Dennie is incorrect.

A.  The Application of the Federal Arbitration Act

The Federal Arbitration Act ("FAA") is routinely applied to employment contracts such as the one at issue here. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002); *Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 301 (4th Cir. 2002); *Rum v. DARCARS of New Carrollton, Inc.*, No. DKC 12-0366, 2012 WL 2847628, at *4 (D. Md. July 10, 2012) ("[T]he FAA has been repeatedly applied to employment contracts in this circuit.") (citing cases). The FAA reflects a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *cf. Holmes v. Coverall N. Am., Inc.*, 336 Md. 534, 541 (1994). The United States Court of Appeals for the Fourth Circuit has held that a party seeking to compel arbitration under the FAA must show: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce,[3] and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (citation and internal quotation marks omitted). Importantly, "'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, [even where] the problem at hand is the construction of the contract language itself.'" *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 374 (4th Cir. 2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). This "heavy presumption . . . in favor of

---

[3] Neither party addresses whether the Employee Agreement evidences a transaction involving interstate commerce. Dennie seems to concede that it does because her Complaint contains claims under Title VII, which only apply to an employer engaged in commerce. *See* 42 U.S.C. § 2000e(b), (g), (h). Accordingly, the Court finds that this element has been met. This finding is consistent with the general principle that , "'[e]mployment contracts, except for those covering workers engaged in transportation, are covered by the FAA.'" *Rum v. DARCARS of New Carrollton, Inc.*, No. DKC 12-0366, 2012 WL 2847628, at *4 (D. Md. July 10, 2012) (quoting *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2001)).

arbitrability" retains particular significance where the arbitration clause is broadly worded. *Id.* (internal citations and quotations omitted).

The parties' dispute regarding the arbitrability of Count Nine against Williams focuses on two primary issues: (1) whether the arbitration clause applies to Williams as a nonsignatory to the Employment Agreement and (2) whether the arbitration clause covers the complained-of conduct in Count Nine. The Court addresses each in turn

**B.      Williams as non-signatory**

Generally, "arbitration is a matter of contract [interpretation] and a party cannot be required to submit to arbitration any dispute which she has not agreed so to submit." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000).  That said, "[i]t does not follow . . . that under the [Federal Arbitration] Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision." *Id.* at 417 (quoting *Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir. 1960)). Theories "arising out of common law principles of contract and agency law" can provide a basis for binding non-signatories to arbitration agreements. *Id.* (citing *Thomson–CSF v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir. 1995)); *see also Am. Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006). These principles include "1) incorporation by references; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel." *Int'l Paper Co.*, 206 F.3d at 417 (citation omitted); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (noting that traditional principles of state law, such as estoppel, may support arbitration by a nonparty to the written arbitration agreement); *cf. Schneider Elec. Buildings Critical Sys., Inc. v. W. Sur. Co.*, 231 Md. App. 27, 42 (2016).

Here, Williams argues that the arbitration clause covers his alleged misconduct on the theories of estoppel and agency. For equitable estoppel to apply, "at a minimum, there must be allegations of coordinated behavior between a signatory and a nonsignatory defendant, . . . and that the claims against both the signatory and nonsignatory defendants must be based on the same facts, be inherently inseparable, and fall within the scope of the arbitration clause." *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 374 (4th Cir. 2012) (internal citations and quotations omitted). *See also Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395–96 (4th Cir. 2005) ("application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." (internal citation, quotations, and alterations omitted)). In this context, the arbitration clause must be read broadly enough to cover nonsignatories or else "the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Brantley*, 424 F.3d at 396 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)) (quotations and alterations omitted); *cf. Griggs v. Evans*, 205 Md. App. 64, 82–83 (2012).

Dennie's complaint pleads concerted conduct between the Defendants to justify extending the arbitration clause to Williams. Indeed, the complaint's "facts common to all counts" section focuses almost exclusively on Williams' alleged acts as a sexual predator against Plaintiff and other female co-workers while he was a manager in MedImmune's supervisory chain of command. Consequently, those Counts involving Medimmune (Counts One through Eight) are based on the acts of its "authorized agent," Williams," for subjecting Dennie to disparate treatment, engaged in *quid pro quo* sexual harassment, created a hostile work

8

environment, and unlawfully retaliated against her. Count Nine is based on the identical concerted alleged discriminatory and retaliatory conduct. *See* ECF No. 1 at 27. Accordingly, Dennie's claims against MedImmune and Williams undoubtedly arose out of the same "occurrence" or "incident". *Cf. Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 374 (4th Cir. 2012) (determining that a signatory's and nonsignatory's conduct was "coordinated by virtue of each defendant's alleged involvement in [the] incident—instigating and contributing to one another"). Dennie's claims against Williams also depend, "in some part, upon the nature of the tortious acts allegedly committed" by MedImmune, and vice versa. *See Aggarao*, 675 F.3d at 374–75 (4th Cir. 2012) (citing *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 398–99 (5th Cir. 2006) (affirming decision compelling plaintiff to arbitrate claims against nonsignatory parent company because claims were factually tied to claims against signatory subsidiaries)). Given that Dennie has conceded that claims against Mediummune are subject to arbitration, she is hard pressed to argue that the claims involving Medimmune's confederate, Williams, are not. *See* Joint Motion to Stay Proceedings Pending Arbitration, ECF No. 9. Accordingly, Dennie is equitably estopped from avoiding the arbitration clause as to its claim against Williams.

Alternatively, because Dennie has pleaded Williams as the agent of Medimmune, Williams' claims are subject to arbitration. *See Int'l Paper Co.*, 206 F.3d at 417; *Collie v. Wehr Dissolution Corp.*, 345 F. Supp. 2d 555, 562 (M.D.N.C. 2004) (concluding non-signatories to an arbitration agreement may be bound by or enforce an arbitration agreement executed by other parties under principles of contract and agency law). Where "a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 (3d Cir. 1993); *see also Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 11 (1st

9

Cir. 2014) ("[A] number of our sister circuits have addressed this issue, and all have held that an agent is entitled to the protection of her principal's arbitration clause when the claims against her are based on her conduct as an agent.") (citing cases); *Meridian Imaging Sols., Inc. v. OMNI Bus. Sols. LLC*, No. 1:17-CV-186, 2017 WL 1491134, at *9 (E.D. Va. Apr. 25, 2017) (employee of signatory may compel arbitration). This is so "when the non-signatory party is an employee of the signatory corporation and the underlying action in the dispute was undertaken in the course of the employee's employment." *Grand Wireless, Inc.*, 748 F.3d 1, 11 (1st Cir. 2014); *Griggs v. Evans*, 205 Md. App. 64, 92 (2012).

Dennie nonetheless maintains, without support, that the arbitration clause does not reach Williams' conduct as pleaded in Count Nine. ECF No. 14 at 7. In that very count, however, Dennie alleges Williams, as Dennie's supervisor, engaged in sexual relations with her and other female employees, and then when she complained, investigated her timekeeping in manner that ultimately forced her to resign. *Id.* at 27. Simply put, Count Nine is brought under an agency theory. Accordingly, the arbitration clause covers claims against Williams even though he is not a signatory to Dennie's employment agreement.

### C. Scope of Arbitration Clause

Dennie next argues that the arbitration provision does not cover the conduct alleged in Count Nine. Whether "the factual allegations underlying the claim are within the scope of the arbitration clause" does not depend on "the legal label assigned to the claim." *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile*, 863 F.2d 315, 319 (4th Cir. 1988); *see also Sutton v. Hollywood Entm't Corp.*, 181 F. Supp. 2d 504, 510 (D. Md. 2002). Rather, where there is a "significant relationship" between the scope of the arbitration clause and the claims alleged, arbitration is warranted. *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile*, 863 F.2d at 321; *Am. Recovery*

*Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (finding that a broad arbitration clause rendered all claims bearing a "significant relationship" to the parties' contract arbitrable).

Dennie's Employment Agreement covers "any and all disputes arising or relating to [her] employment with Company, [her] application for such employment, [her] termination of such employment or post-employment issues with Company." The clause further provides that "claims related to any discrimination on the basis of . . . race [or] retaliation" under state or federal law and also "claims for breach of an express or implied contract or tort claims" must be arbitrated. ECF No. 11-1 at 2–3. Count Nine focuses on the distress Dennie suffered at the hands of Williams for his discrimination and retaliatory conduct. It accordingly involves a matter "arising or relating to [her] employment," and is based on her claim of "retaliation." *Id.* The significant relationship test has therefore been met, and Count Nine must be arbitrated.

Dennie urges that *Sutton v. Hollywood Entm't Corp.*, 181 F. Supp. 2d 504 (D. Md. 2002) mandates a different result. In *Sutton*, the plaintiff-patron of defendant video store was mistakenly arrested on suspicion of having robbed the store the previous evening. *Id.* at 506–07. Plaintiff filed suit against the video store, alleging malicious prosecution, false imprisonment, and negligent hiring, training, and supervision. Defendant video store sought to compel arbitration based on the cause in the Plaintiff's membership application which stated that "any dispute arising out of or relating in any way to Applicant's relationship with HOLLYWOOD VIDEO shall be subject to . . . arbitration." *Id.* at 508. This Court denied the defendant's motion reasoning that the subject of the agreement between the parties was a "video rental contract." *Id.* at 510. The arbitration clause was consequently limited to covered patron-related "matters such as the rental fees, repairs, replacements of videos." *Id.* at 512–13.

Unlike the arbitration clause in *Sutton,* the Dennie's clause is more expansive, covering "any and all disputes arising from or relating to" her employment. The clause also expressly covers including tort and discrimination claims. Dennie's intentional infliction of emotional distress claim is a tort committed by her supervisor during and in relation to her job at MedImmune, and is therefore clearly covered by the arbitration clause. This is especially so in light of "the liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24. *Sutton*, therefore, does nothing to upset the Court's analysis.

### D. Dismissal versus Stay

Although the FAA requires a court, upon motion by any party, to stay judicial proceedings involving issues covered by written arbitration agreements, *see* 9 U.S.C. § 3, the United States Court of Appeals for the Fourth Circuit has held that "[n]otwithstanding the terms of § 3 . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001); *see also Poteat v. Rich Prods. Corp.*, 91 F. App'x 832, 835 (4th Cir. 2004) (compelling arbitration and dismissing the action where all of the claims are arbitrable, citing *Choice Hotels*); *Bey v. Midland Credit Mgmt.*, No. GJH-15-1329, 2016 WL 1226648, at *5 (D. Md. Mar. 23, 2016) (same); *Byrnes v. Santa Fe Nat. Tobacco Co., Inc.*, No. GLR-16-2445, 2017 WL 713911, at *2 (D. Md. Feb. 23, 2017) (same). The parties have already jointly agreed to arbitrate Counts One through Eight. ECF No. 9. And this Court has decided that Count Nine should proceed to arbitration. Thus, dismissal of this action is appropriate.

### IV. CONCLUSION

For the foregoing reasons, Count Nine is subject to arbitration under the Employee Agreement. The joint motion for a stay pending arbitration (ECF No. 9) is therefore granted in

part and denied in part. It is denied to the extent it seeks a stay of these proceedings rather than dismissal of the case. Williams' motion to compel arbitration (ECF No. 11) is granted and this action is dismissed. A separate Order follows.

7/10/2017                                                      /S/
Date                                                           Paula Xinis
                                                               United States District Judge